**IN THE UNITED STATES DISTRICT COURT OF**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| STONE ENERGY CORPORATION & | § | CIVIL ACTION NO. _____ |
| STONE ENERGY OFFSHORE, L.L.C. | § | |
| | § | |
| VERSUS | § | JUDGE _____ |
| | § | |
| NIPPON STEEL & SUMITOMO | § | |
| METAL CORPORATION & PYRAMID | § | MAGISTRATE JUDGE _____ |
| TUBULAR PRODUCTS, LP | § | |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1441, 1446, 1331, and 1332,  and further based on the grounds set forth in this Notice of Removal, Defendant Pyramid Tubular Products, L.L.C. ("Pyramid")[1] hereby removes this action from the 15th Judicial District Court for the Parish of Lafayette, State of Louisiana, to the United States District Court for the Western of Louisiana, Lafayette Division.  In support of this Notice of Removal, Pyramid submits as follows:

## PROCEDURAL HISTORY AND COMPLIANCE
## WITH REQUIREMENTS FOR REMOVAL

1.

On October 23, 2017, Plaintiffs Stone Energy Corporation and Stone Energy Offshore, L.L.C. (collectively, "Plaintiffs") filed their Petition for Damages (the "Petition") against Pyramid and Nippon Steel & Sumitomo Metal Corporation ("NSSMC") (collectively, "Defendants") in the 15th District Court for the Parish of Lafayette, State of Louisiana entitled *Stone Energy*

---

[1] As noted below, Pyramid Tubular Products, LP converted to limited liability company on November 6, 2015.  Accordingly, Pyramid presents this notice in its current capacity as a limited liability company.

NOTICE OF REMOVAL                                                                                          1

*Corporation & Stone Energy Offshore, L.L.C. v. Nippon Steel & Sumitomo Metal Corporation &*

*Pyramid Tubular Products, LP, and given Products, LP,* (the "State Court Action").

2.

The citation and Petition was served via certified mail, return receipt requested and received by Pyramid on January 22, 2018.  *See* Attachment 1.

3.

This Notice of Removal has been timely filed within thirty days of receipt by Pyramid of the complaint and summons.  *See* 28 U.S.C. § 1446(b).

4.

In accordance with 28 U.S.C. § 1446(a), the following documents are attached to and incorporated by reference into this notice:

a.   A complete copy of all pleadings filed and process served in the State Court Action (Attachment 1);

b.   a list of all documents included in the State Court record, arranged by order of filing date (Attachment 2);

c.   a list of all attorneys involved in the case and the parties they represent (Attachment 3);

d.   a certificate that the entire State court record has been filed along with this Notice of Removal (Attachment 4); and

e.   a civil cover sheet (Attachment 5).

5.

Removal to the Western District of Louisiana is appropriate because it is the district which embraces the place where the State Court Action is pending.  28 U.S.C. § 1441(a).

## GROUNDS FOR REMOVAL

6.

The Court has original jurisdiction over this action under 28 U.S.C. §§ 1332(a) and 1331.

## DIVERSITY JURISDICTION

7.

The Court has original jurisdiction based upon diversity of citizenship because there is complete diversity between Plaintiffs and Defendants and the amount in controversy between the parties, exclusive of interest and costs, exceeds $75,000. *See* 28 U.S.C. §§ 1332(a)(1) and 1441(a).

**The Parties are Citizens of Different States**

8.

According to Plaintiffs' Petition, Plaintiff Stone Energy Corporation is now, and was at the time of the commencement of this litigation, a Delaware corporation with its principal place of business in Lafayette Louisiana.  Accordingly, Stone Energy Corporation is a citizen of Delaware and Louisiana.

9.

Stone Energy Offshore, L.L.C. is a limited liability company.  Citizenship of a limited liability company is determined by the citizenship of its members.  Based on publicly available information, Stone Energy Corporation is the sole member of Plaintiff Stone Energy Offshore, L.L.C.  According to Plaintiffs' Petition, Stone Energy Corporation is now and was at the time of the commencement of this litigation a Delaware corporation with its principal place of business in Lafayette Louisiana.  Accordingly, Stone Energy Offshore, L.L.C. is a citizen of Delaware and Louisiana.

---

NOTICE OF REMOVAL                                                                                      3

10.

According to Plaintiffs' Petition and based on information and belief, Defendant NSSMC is a Japanese corporation with its principal place of business in Tokyo, Japan.  Accordingly, NSSMC is a citizen of Japan.

11.

Defendant Pyramid is now, and was at the time of commencement of this litigation, a limited liability company.  Pyramid has been sued in its former capacity as a limited partnership. On November 6, 2015, Pyramid converted to a limited liability company.  This notice is based on Pyramid's status as a limited liability company.[2]  Citizenship of a limited liability company is determined by the citizenship of its members.  Sumitomo Corporation of Americas is the sole member of Pyramid.  Sumitomo Corporation of Americas is now and was at the time of the commencement of this litigation a New York corporation with its principal place of business in New York.  Accordingly, Pyramid is a citizen of New York.

12.

Accordingly, Defendants Pyramid and NSSMC are citizens of different states than Plaintiffs.

---

[2] Even if the Court were to examine Pyramid's citizenship based on the allegation that it is a limited partnership (which it no longer is), diversity jurisdiction would still exist.  The citizenship of a limited partnership is determined by the citizenship of each of its partners.  When Pyramid was a limited partnership, its partners were Sumitomo Corporation of Americas and SC Pipe Services Inc.  Sumitomo Corporation of Americas is now, and was at the time of the commencement of this litigation, a New York corporation with its principal place of business in New York.  SC Pipe Services Inc. is now, and was at the time of the commencement of this litigation, a New York corporation with its principal place of business in Texas.  Accordingly, as a limited partnership, Pyramid was a citizen of New York and Texas.

**The Amount in Controversy Exceeds $75,000**

13.

While Plaintiffs have not specified an amount in controversy in their Petition, it is facially apparent from their Petition that the amount in controversy exceeds $75,000. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995) ("[A] court can determine that removal was proper if it is facially apparent that the claims are likely above [$75,000].").

14.

Plaintiffs' Petition asserts that they purchased certain products from the Defendants in connection with their drilling of a well known as the Amethyst #1 Well (the "<u>Well</u>") and that those products cost $2,245,650. (Pet. ¶¶ 6–19.) Plaintiffs aver that the products failed, were "defective," and were "rendered . . . useless." (*See, e.g.*, Pet. ¶ 29, 34, 39, 43, 46, 52, 58, 71–74.) In particular, Plaintiffs' "Redhibition" cause of action under Louisiana Civil Code article 2520 is based on allegations that the products at issue contained redhibitory defects. (Pet. ¶¶ 70–75). Under that statute, buyers of products containing redhibitory defects have the right to obtain rescission of the sale of the products, which in this action were sold for $2,245,650. Accordingly, the amount in controversy facially appears to be well above $75,000.

15.

Plaintiffs further seek to recover damages purportedly "associated with the [W]ell" including: (a) drilling costs; (b) completion costs; (c) tieback costs; (d) stimulation costs; (e) replacement choke costs; (f) temporary abandonment costs; (g) premature abandonment costs; (h) well control; and (i) costs associated with additional Tubing and Couplings manufactured by NSSMC and sold by Pyramid that are unusable due to the defects noted herein. (Pet. ¶ 82.) As noted below, the Well at issue is an off-shore oil and gas well in the Gulf of Mexico. (*See infra.*

at ¶ 20.)  Upon information and belief, damages associated with the costs of drilling an offshore well in the Gulf of Mexico alone likely exceed $75,000.  Plaintiffs also request attorney's fees. (Pet. ¶ 83.)  Accordingly, based on Plaintiffs' allegations, it is facially apparent that the amount in controversy facially exceeds $75,000.

## FEDERAL QUESTION JURISDICTION

16.

The Court also has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Plaintiffs' claims are governed by the Outer Continental Shelf Lands Act ("OCSLA"). 43 U.S.C. § 1331.

17.

Under the OCSLA, "the district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals, or (B) the cancellation, suspension, or termination of a lease or permit under this subchapter."  43 U.S.C. § 1349(b)(1).

18.

The Fifth Circuit Court of Appeals repeatedly has confirmed that OCSLA's grant of federal court jurisdiction is quite broad.  *See In re DEEPWATER HORIZON*, 745 F.3d 157, 163 (5th Cir. 2014) ("The Fifth Circuit has interpreted [the OCSLA's jurisdictional provision] as straightforward and broad."); *see also EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 569 (5th Cir. 1994) ("[A] broad reading of the jurisdictional grant of section 1349 is supported by the expansive substantive reach of the OCSLA.").  "A plaintiff does not need to expressly invoke

OCSLA in order for it to apply." *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013).

19.

The Fifth Circuit applies a two-part test in assessing whether there is federal question jurisdiction under OCSLA: (1) whether "the activities that caused the injury constituted an operation conducted on the outer Continental Shelf that involved the exploration and production of minerals"; and (2) whether "the case arises out of, or in connection with this operation." *In re DEEPWATER HORIZON*, 745 F.3d at 163.

20.

With respect to the first part of this test, the activities that caused the Plaintiffs' alleged injury were conducted on the outer Continental Shelf constitute an "operation," as that term is used in OCSLA, because they involved "production." 43 U.S.C. § 1349(b)(1) (granting district courts jurisdiction over any "operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf"). "Production" is defined as "those activities which take place after the successful completion of any means for the removal of minerals, including such removal, field operations, transfer of minerals to shore, operation monitoring, maintenance, and work-over drilling." 43 U.S.C. § 1331. The Petition here specifically alleges that Plaintiffs needed the products at issue to "produce natural gas and other hydrocarbons from the Well" and used the products at the Well, and their alleged damages include damages associated with those "operations" and "production," namely "well control costs, fishing costs, loss of mineral lease, premature abandonment of the Well, and associated expenses." (Pet. ¶¶ 7, 28, 37.) Accordingly, Plaintiffs clearly allege that they were engaged in an "operation" involving the "production" of

minerals.  *See Parish of Plaquemines v. Total Petrochemical & Refining USA, Inc.*, 64 F. Supp. 3d 872, 895 (E.D. La. 2014) (noting "the term 'operation' is broadly construed because it is used in conjunction with the terms 'exploration,' 'development,' and 'production,' all of which are broadly defined in OCSLA, and encompass the full range of oil and gas activity."); *see also Placid Oil Co.*, 26 F.3d at 568 (Explaining that the terms "exploration," development," and "production" "are defined broadly in [the OCSLA] to encompass the full range of oil and gas activity from locating mineral resources through the construction, operation, servicing and maintenance of facilities to produce those resources.").  Plaintiffs' alleged "operations" at the Well were also conducted on the outer Continental Shelf.  (43 U.S.C. § 1349(b)(1)).  The outer Continental Shelf is all submerged land that is at least three miles offshore. 43 U.S.C. § 1331(a); 43 U.S.C. § 1301(a)(2).  The Well is located in Block 26 of the "Mississippi Canyon,"[3] which is "23 miles from the nearest shoreline in Plaquemines Parish, Louisiana."[4]  As such, the first prong of the OCSLA jurisdiction test is satisfied. *In re DEEPWATER HORIZON*, 745 F.3d at 163

21.

The Fifth Circuit applies a broad "but-for" test when determining the second part of the test for applying the OSCLA, *i.e.*, whether the case "arises out of, or in connection with" the operation.  *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 350 (5th Cir. 1999).  In *Texaco Expl. and Prod. Inc. v. AmClyde Engineered Prod. Co.*, the court held a products liability action met this test where "the harm alleged by [plaintiff] arises directly from the construction of the [a fixed platform] . . . , and would not have occurred but for the development of the Outer Continental

---

[3]  *Stone: Amethyst well comes online in January*, Offshore Energy Today.com https://www.offshoreenergytoday.com/stone-amethyst-well-comes-online-in-january/ (last visited Feb. 5, 2018).

[4] Environmental Documents Prepared for Oil, Gas, and Mineral Operations by the Gulf of Mexico Outer Continental Shelf (OCS) Region, 78 Fed. Reg. 47746 (Aug. 6, 2013), available at https://www.boem.gov/78-FR-47746/.

Shelf in the form of . . . construction." 448 F.3d 760, 769 (5th Cir. 2006). Plaintiffs allege they had to mobilize well control specialists and begin recovery/"fishing" operations at the Well. (Pet. ¶ 31–32.) Therefore, the alleged harm would not have occurred but for the operations and production of oil and gas at the Well. Accordingly, Plaintiffs' allegations also satisfy this prong for OSCLA application to their claims.

## CONSENT TO REMOVAL

22.

Defendant NSSMC has not been properly joined and served as of the date of this Notice. Therefore, it is not necessary that they consent to removal. See 28 U.S.C. § 1446(b)(2)(A) ("When a civil action is removed solely under section 1441(a), all defendants who have been properly joined *and served* must join in or consent to the removal of the action.") (emphasis added).

## NOTICE TO STATE COURT AND PLAINTIFFS

23.

Pursuant to 28 U.S.C. § 1446(d), Pyramid will serve a copy of the original Notice of Removal with the clerk of court for the 15th Judicial District Court, Lafayette Parish of Louisiana and will serve a copy on counsel for Plaintiffs in the removed action.

## RESERVATION OF DEFENSES

24.

By filing this Notice of Removal, Pyramid does not intend to waive any defenses that it may have to Plaintiffs' claims, and expressly reserves all defenses it may have.

## CONCLUSION

25.

WHEREFORE, pursuant to 28 U.S.C. § 1446(d), the filing of this Notice of Removal in this Court and the filing of same with the state court confers exclusive jurisdiction over this action to this Court and simultaneously divests the state court of jurisdiction with respect to this action. Pyramid prays that this action be removed from the 15th Judicial District Court for the Parish of Lafayette to this Honorable Court.

Dated: February ___, 2018

Respectfully submitted,

By: /s/ Joseph A. Fischer
    Joseph A. Fischer, III
    Louisiana Bar No. 34381
    tfischer@jw.com

**JACKSON WALKER LLP**
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:  (713) 752-4200
Facsimile:  (713) 752-4221

**ATTORNEYS FOR DEFENDANT PYRAMID TUBULAR PRODUCTS, L.L.C.**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this ____ day of February, 2018, a true and correct copy of the foregoing has been forwarded to counsel for Plaintiffs via ECF as follows:

Paul Matthew Jones
Brittan J. Bush
Liskow & Lewis
822 Harding Street
P.O. Box 52008
Lafayette, Louisiana 70505

Michael A. Golemi
Liskow & Lewis
1001 Fannin, Suite 1800
Houston, Texas 77002

_____
Joseph A. Fischer, III