**IN THE UNITED STATES DISTRICT COURT OF
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION**

| | | |
|---|---|---|
| STONE ENERGY CORPORATION & | § | CIVIL ACTION NO. 6:18-CV-00213 |
| STONE ENERGY OFFSHORE, L.L.C. | § | |
| | § | |
| VERSUS | § | JUDGE JUNEAU |
| | § | |
| NIPPON STEEL & SUMITOMO | § | |
| METAL CORPORATION & PYRAMID | § | MAGISTRATE JUDGE WHITEHURST |
| TUBULAR PRODUCTS, L.L.C. | § | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Local Rule 7.4, Defendants Pyramid Tubular Products, L.L.C. ("Pyramid") and

Sumitomo Corporation of Americas ("SCOA") (collectively, "SCOA Defendants") submit this

Memorandum in Support of their Motion for Partial Summary Judgment as follows:

## I.   INTRODUCTION

This action concerns a metal coupling manufactured by Nippon Steel & Sumitomo Metal

Corporation[1] and acquired by Plaintiffs. Plaintiffs allege the coupling was defective and assert

claims under (1) the Louisiana Products Liability Act ("LPLA"), (2) Louisiana Civil Code article

2520 (Redhibition), and (3) Louisiana Civil Code articles 2524 and 2529 (Breaches of Warranty

that a thing is fit for ordinary use and the kind specified in the contract).

Summary Judgment is appropriate on Plaintiffs' LPLA against the SCOA Defendants

because Pyramid and SCOA are not the "manufacturers" of the products at issue—a statutory

requirement for such claims. *See* La. R.S. 9:2800.52. Indisputable evidence establishes that the

---

[1]  This company has recently changed its trade name to "Nippon Steel Corporation." (See ECF No. 30). We will refer to this party as "Nippon Steel."

**MEMORANDUM IN SUPPORT OF DEFENDANTS PYRAMID TUBULAR PRODUCTS, L.L.C. AND
SUMITOMO CORPORATION OF AMERICA'S MOTION FOR PARTIAL SUMMARY JUDGMENT –
Page | 1**

SCOA Defendants did not make, design, or otherwise modify the Products at issue. *See* La. R.S. 9:2800.53(1). Nor are the SCOA Defendants "alter egos" of Nippon Steel because there is no common ownership or control between the SCOA Defendants and Nippon Steel. *See* La. R.S. 9:2800.53(1)(d).

Plaintiffs' breach of warranty claims under articles 2524 and 2529 must also be dismissed, because article 2520 (redhibition), subsumes Plaintiffs' claims for (1) breach of warranty that a thing is fit for ordinary use and (2) breach of warranty for a thing not of the kind specified in the contract.

## II. FACTUAL BACKGROUND

### A. The SCOA Defendants Sell Plaintiffs Products Manufactured by Nippon Steel.

In 2014, Plaintiffs contacted Pyramid to obtain a quote for a certain type of tubing purportedly needed to produce natural gas from an existing well "and from other wells contemplated but not yet drilled." (Pls. First Am. Compl. ["FAC"] ¶ 19, ECF No. 37; McDonald Decl. ¶ 3). Pyramid provided the requested quote ("Quote") for the requested tubing (the "Products"). The Quote included two options for manufacturer of the Products: (1) Nippon Steel, a Japanese corporation with its principal place of business in Japan, and (2) JFE, also a Japanese manufacturer. (FAC ¶¶ 2, 22–24; McDonald Decl. ¶ 4; Ex. B-1 at 1). Plaintiffs thereafter sent Pyramid a purchase order to confirm that Plaintiffs wished to purchase the Products manufactured by Nippon Steel, as described in the Quote. (FAC ¶ 29; McDonald Decl. ¶ 5; Ex. B-2).

A series of transactions followed. First, Pyramid placed an order for the Products with SCOA. (McDonald Decl. ¶ 6). SCOA then placed an order for the Products with Sumitomo Corporation. (Marrow Decl. ¶ 3). Sumitomo Corporation then placed an order for the Products with Nippon Steel. *Id.* Nippon Steel manufactured the Products in Japan and then sold and

delivered them to Sumitomo Corporation, which sold and delivered them to SCOA, which sold and delivered them to Pyramid. (*Id.* at ¶¶ 3–4). Pyramid then sold and delivered them to Plaintiffs in Houston, Texas on or about June 22, 2015. (FAC ¶ 30; McDonald Decl. ¶ 6).

In that process, the SCOA Defendants did not modify the Products, did not exercise control of the design of the Products, and did not assume or administer any warranty obligations of the Products. (McDonald Decl. ¶ 8; Marrow Decl. ¶ 5).

**B.      The SCOA Defendants are Distinct Entities from Nippon Steel.**

The SCOA Defendants and Nippon Steel are separate companies and do not share common ownership or control. (Farberman Decl. ¶¶ 3–9). Pyramid is wholly owned by SCOA, which, in turn, is wholly owned by Sumitomo Corporation. (*Id.* at ¶ 3). Neither Pyramid nor SCOA owns or controls Nippon Steel, nor are they owned or controlled by Nippon Steel. (*Id.* at ¶¶ 4–5). Likewise, Sumitomo Corporation does not control Nippon Steel, and Nippon Steel does not control Sumitomo Corporation. (*Id.* at ¶ 6). Rather, Sumitomo Corporation and Nippon Steel are separate, publicly traded companies.[2] *Id.* Sumitomo Corporation is not the parent, subsidiary, or affiliate of Nippon Steel. (*Id.* at ¶ 9). Thus, neither of the SCOA Defendants are parents, subsidiaries, or affiliates of Nippon Steel. (*Id.* at ¶¶ 3–9).

**C.      Plaintiffs allege that the Products were "defective" and assert claims based on such allegations.**

Plaintiffs assert that "[o]n December 1, 2016, [they] discovered for the first time that there was a possible failure in the Tubing or Couplings [the Products]." (FAC ¶ 39). Plaintiffs further allege:

- "Inspection of the [Products] revealed that one of the Couplings had broken apart

---

[2] Nippon Steel, a publicly traded corporation, is not owned more than 10% by any publicly traded company. (Nippon Steel Corp. Discl., ECF No. 16).

inside the Well (the 'Failed Coupling')." *Id.* ¶ 44.

- "Further investigation revealed that the Failed Coupling had broken from the inside out adjacent to the J Nose." *Id.* ¶ 45.

- "Additionally, the portion of the Failed Coupling that initially failed showed a classic 'chevron' pattern that is a signature of a recognized mode of failure, which is termed hydrogen embrittlement ('HE')." *Id.* ¶ 46.

- "The failure directly and proximately caused damage to [Plaintiffs] . . . ." *Id.* ¶ 47.

- "[Nippon Steel's] Coupling, which was sold by Pyramid, was defective at the time the [Products] left [Nippon Steel's] control." *Id.* ¶ 90.

- "The defects rendered the Coupling so useless and/or inconvenient that Stone would not have purchased them had it been aware of the defects." *Id.* ¶ 93.

Premised on these allegations, Plaintiffs assert claims based on the LPLA (Counts 1–4), breach of warranty against redhibitory defects under article 2520 (Count 5), and other breaches of warranties under articles 2524 and 2529 (Counts 6 and 7). (*See generally* FAC; Ex. A at 2–3).

### III.   STANDARD OF REVIEW ON SUMMARY JUDGMENT

In a motion for summary judgment, the movant must establish that there is no genuine dispute about any material fact and the law entitles it to judgment. Fed. R. Civ. P. 56(c). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 628 F.3d 725, 728 (5th Cir. 2010). Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 320 (1986). While a party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,'" that party "need not *negate* the elements of the nonmovant's case." *Little*

*v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 106 S. Ct. at 2553–24)) (emphasis in original).

## IV.    ARGUMENTS AND AUTHORITIES

The SCOA Defendants are entitled to judgment as a matter of law based on the law and uncontroverted facts shown below.

**A.    Plaintiffs' LPLA Claims fail against the SCOA Defendants because they are not "manufacturers."**

The LPLA creates a cause of action against *manufacturers* of products—not sellers. *See* La. R.S. 9:2800.54; *see also Jenkins v. Int'l Paper Co.*, (La. App. 2nd Cir. 11/15/06) 945 So.2d 144, 147 (citing La. R.S. 9:2800.52). Plaintiffs' LPLA claims against the SCOA Defendants fail because they are not "manufacturers" under the LPLA, and therefore, cannot be held liable under that statute. *See Wornner v. Christian Home Health Care, Inc.*, No. 13-6416, 2014 WL 130331, at *4 (E.D. La. Jan. 14, 2014).

The LPLA defines "Manufacturer" as follows:

> (1) "Manufacturer" means a person or entity who is in the business of manufacturing a product for placement into trade or commerce. "Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. "Manufacturer" also means:
>
> *              *              *
>
> (d) A seller of a product of an alien manufacturer if the seller is in the business of importing or distributing the product for resale and the seller is the alter ego of the alien manufacturer. The court shall take into consideration the following in determining whether the seller is the alien manufacturer's alter ego: whether the seller is affiliated with the alien manufacturer by way of common ownership or control; whether the seller assumes or administers product warranty obligations of the alien manufacturer; whether the seller prepares or modifies the product for distribution; or any other relevant evidence.

La. R.S. 9:2800.53(1).[3] In contrast the LPLA defines a "Seller" to mean:

> a person or entity who is ***not a manufacturer*** and who is in the business of conveying title to or possession of a product to another person or entity in exchange for anything of value."

La. R.S. 9:2800.53(2) (emphasis added). The undisputed facts show the SCOA Defendants are "sellers," not "manufacturers," under the LPLA.

As an initial matter, the SCOA Defendants did not produce, make, fabricate, construct, design, remanufacture, recondition, or refurbish the Products. (McDonald Decl. ¶ 7; Marrow Decl. ¶ 4). And Plaintiffs do not contend otherwise. (*See generally* FAC). Therefore, it is undisputed that the SCOA Defendants do not meet the first part of the above quoted statutory definition of "manufacturer."

Plaintiffs, instead, allege that "[u]pon information and belief, [the SCOA Defendants] are Nippon Steel's alter egos by way of common ownership and control," and thus a "manufacturer" under subsection (d) of La. R.S. 9:2800.53(1). (FAC ¶¶ 54–58). This "belief" is wholly unsupported, and indeed disproven by the uncontroverted evidence.

To determine whether a seller qualifies as a "manufacturer" under subsection (d) of La. R.S. 9:2800.53(1), courts look  to whether the plaintiff "present[s] evidence or argument that . . . the statute's defined factors apply to [the seller]." *Performance Contractors, Inc. v. Great Plans Stainless, Inc.*, No. 11-485-JJB, 2012 WL 5398534, at *6 (M.D. La. Nov. 2, 2012); *see also Matthews v. Wal-Mart Stores, Inc.*, 97-0449 (La. App. 4 Cir. 3/11/98) 708 So. 2d 1248,1249 ("The statute provides that the alter ego determination is based upon whether the seller has common

---

[3] "A 'product of an alien manufacturer' is a product that is manufactured outside the United States by a manufacturer who is a citizen of another country or who is organized under the laws of another country." La. R.S. 9:2800.53(1). The Products here meet this definition. (FAC ¶¶ 2, 56; McDonald Decl. ¶¶ 4, 7).

**MEMORANDUM IN SUPPORT OF DEFENDANTS PYRAMID TUBULAR PRODUCTS, L.L.C. AND SUMITOMO CORPORATION OF AMERICA'S MOTION FOR PARTIAL SUMMARY JUDGMENT – Page | 6**

ownership or control over the alien manufacturer, whether the seller is involved with the warranty obligation of the manufacturer, whether the seller modifies the product, 'or any other relevant evidence.'"). In *O'Shaughnessy v. Acuderm, Inc*., the court held that the defendant was not the alter ego of an alien manufacturer where defendant showed, via affidavit, that it (1) did not modify the products; (2) did not exercise control of the design; (3) did not assume or administer warranty obligations of the products; and (4) was not affiliated with the manufacturer through common ownership or control. 2006-2218 (La. App. 1 Cir. 9/19/06); 2007 WL 2713543, at *2. The same record exists here and, thus, supports the same result.

Specifically, the summary judgment evidence establishes the following:

- Pyramid does not own or control Nippon Steel. (Farberman Decl. ¶ 5).

- Pyramid is not owned or controlled by Nippon Steel. *Id*.

- Pyramid is not a parent, subsidiary, or affiliate of Nippon Steel. (*Id*. at ¶ 7).

- SCOA does not own or control Nippon Steel. (*Id*. at ¶ 4).

- SCOA is not owned or controlled by Nippon Steel. *Id*.

- SCOA is not a parent, subsidiary, or affiliate of Nippon Steel. (*Id*. at ¶ 8).

- Sumitomo Corporation and Nippon Steel are separate, publicly traded companies. (*Id*. at ¶ 6).

- Sumitomo Corporation does not control Nippon Steel. (*Id*. at ¶ 6).

- Sumitomo Corporation is not controlled by Nippon Steel. *Id*.

- Sumitomo Corporation is not a parent, subsidiary, or affiliate of Nippon Steel. (*Id*. at ¶ 9).

Likewise, the SCOA Defendants did not modify, exercise control of the design of, or assume or administer any warranty obligations of the Products. (McDonald Decl. ¶ 8; Marrow Decl. ¶ 5). For these reasons, the evidence shows that the SCOA Defendants are not "manufacturers" of the Products at issue here as that term is defined in the LPLA. The SCOA Defendants are therefore entitled to judgment as a matter of law on Plaintiffs' LPLA claims.

**B.      Plaintiffs' Warranty Claims Under Louisiana Civil Code Articles 2524 and 2529 Fail Because Those Claims Are Based on Alleged Redhibitory Defects.**

Plaintiffs assert claims for breaches of three types of warranties provided under Louisiana law: (1) article 2520 (redhibition); (2) article 2524 (thing fit for ordinary use); and (3) article 2529 (thing not of the kind specified in the contract). As this Court has repeatedly recognized, when claims are based solely on alleged redhibitory defects—as is the case here—a plaintiff is precluded from bringing claims for breach of warranties under article 2524 or 2529, and is limited to a claim for breach of warranty against redhibitory defects under article 2520. *Chesapeake Louisiana, L.P. v. Innovative Wellsite Sys., Inc.*, No. 12-2963, 2014 WL 5796794, at *5 (W.D. La. Nov. 6, 2014); *Southwest. La. Hosp. Ass'n v. BASF Const. Co.*, 947 F. Supp. 2d 661, 701 (W.D. La. 2013); *Hollybrook Cotton Seed Processing, LLC v. Carver, Inc*. No. 09-0750, 2010 WL 892826, at *8 (W.D. La. Mar. 11, 2010). Accordingly, the court should grant summary judgment in favor of the SCOA Defendants on Plaintiffs' breach-of-warranty claims under articles 2524 or 2529 as it did in those three cases.

In *Chesapeake*, for example, the plaintiffs alleged that a lock screw assembly in a tubing head on a well was defective, resulting in a blowout. *Chesapeake Louisiana*, 2014 WL 5796794, at *1. Finding that Plaintiffs' claims were based on "redhibitory defects," the court concluded:

> Thus, Plaintiffs' claims under [a]rticle 2524 are subsumed by their claims under [a]rticle 2520 for breach of the warranty against

redhibitory defects. Summary judgment in favor of [the defendant] is, therefore, appropriate as a matter of law.

*Id.* at *5.

Likewise, in *Southwest Louisiana Hospital*, this Court examined the interplay between breaches of warranties under articles 2520 and 2524, noting that claims for breach of warranty against redhibitory defect under article 2520 were available where the product is allegedly defective, whereas claims for breach of warranty that a thing is fit for ordinary use under Article 2524 are appropriate if the product "contains no redhibitory defects" but is nevertheless "unfit for the particular use the buyer intended it for." *Southwest. La. Hosp.*, 947 F. Supp. 2d at 701. Finding that the plaintiff's "allegations center[ed] around the fact that" a product had a "hidden redhibitory defect," the Court held that the plaintiff's "claims sound in breach of warranty against redhibitory defects under article 2520 only, and not breach of warranty of fitness for ordinary use under article 2524." *Id*. For this reason, the Court held that "the plaintiff may only submit a claim under article 2520 under a theory of a breach of the warranty against redhibitory defects." *Id*. at 702.

The same rationale and result also applies to Plaintiffs' claims for breach of warranty for a thing not of the kind specified in the contract under article 2529. Indeed, this Court has also interpreted article 2529, and expressly held that it does not apply "[i]f there are redhibitory defects in the thing sold." *Hollybrook*, 2010 WL 892826, at *8. Thus, "[c]auses of action under articles 2524 and 2529 are available only when redhibition under article 2520 is not . . . ." *Id*. (noting further that the plaintiffs' "claims under article 2524 and 2529 are subsumed by its claims under article 2520 for breach of the warranty against redhibitory defects").

Here, Plaintiffs' causes of action are each clearly premised on allegations that the Products were "defective," susceptible to cracking and failure due to "hydrogen embrittlement," and "broke

because of the very [hydrogen embrittlement] that [the SCOA Defendants] and [Nippon Steel] warranted against." (*See, e.g.*, FAC ¶¶ 40, 46–47, 50, 60–63, 66–71, 76–77, 79, 81–82, 87, 90–94, 98–100, 103–04). Thus, like the plaintiffs in *Chesapeake*, *Southwest La. Hosp.*, and *Hollybrook*, Plaintiffs base their claims here on allegations that the Products had redhibitory defects. Accordingly, Plaintiffs' claims for breach of warranties under articles 2524 and 2529 are subsumed by Plaintiffs' redhibition cause of action, and summary judgment on those other counts is proper.[4]

## V.   CONCLUSION

For these reasons, the SCOA Defendants requests that the Court grant their Motion for Partial Summary Judgment, and for such other and further relief, at law or in equity, to which the SCOA Defendants may show themselves justly entitled.


Dated:  May 8, 2020

---

[4] Although, as shown above, the SCOA Defendants are not manufacturers under the LPLA, Plaintiffs' warranty claims would also be improper as to a manufacturer because the LPLA is the sole and exclusive remedy against manufacturers for injury to property. *See Worrner v. Christian Home Health Care, Inc.*, No. 13-6416, 2014 WL 130331, at *4 (E.D. La. Jan. 14, 2014) (emphasis in original) ("The LPLA 'provides the *exclusive* remedy for persons claiming injury due to products defects.'"); *see also Grenier v. Med. Eng'g Corp.*, 99 F. Supp. 2d 759, 763 (W.D. La. 2000) (dismissing breach of warranty of fitness for a particular purpose claim because it was outside the scope of the LPLA, the exclusive remedy); *Touro Infirmary v. Sizeler Architects*, 2004-CA-2210 (La. App. 4 Cir. 11/21/06) 947 So.2d 740, 744 ("[T]he breach of express warranty is encompassed by the LPLA and is no longer viable as an independent theory of recovery against a manufacturer.").

**MEMORANDUM IN SUPPORT OF DEFENDANTS PYRAMID TUBULAR PRODUCTS, L.L.C. AND SUMITOMO CORPORATION OF AMERICA'S MOTION FOR PARTIAL SUMMARY JUDGMENT – Page | 10**

Respectfully submitted,


By: /s/ *Joseph A. Fischer*

Joseph A. Fischer, III
Louisiana Bar No. 34381
tfischer@jw.com

**JACKSON WALKER LLP**
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:  (713) 752-4200
Facsimile:  (713) 752-4221

Christopher A. Thompson
*Admitted Pro Hac Vice*
cthompson@jw.com

**JACKSON WALKER LLP**
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
Telephone:  (214) 953-6000
Facsimile:  (214) 953-5822

**ATTORNEYS   FOR   DEFENDANT PYRAMID   TUBULAR   PRODUCTS, L.L.C.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 8th day of May, 2020, a true and correct copy of the foregoing

has been served on the following counsel of record via e-mail as follows:

Paul Matthew Jones
Liskow & Lewis
mjones@liskow.com

Michael A. Golemi
Liskow & Lewis
magolemi@liskow.com

Brittan J. Bush
Liskow & Lewis
bjbush@liskow.com

David R. Frohn
MG+M Law Firm
dfrohn@mgmlaw.com

Meghan B. Senter
MG+M Law Firm
msenter@mgmlaw.com

/s/ *Christopher A. Thompson*
Christopher A. Thompson