**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| STONE ENERGY CORPORATION & STONE ENERGY OFFSHORE, L.L.C. | * * * | CIVIL ACTION NO. 6:18-CV-00213 |
| VERSUS | * * | DISTRICT JUDGE MICHAEL J. JUNEAU |
| NIPPON STEEL & SUMITOMO METAL CORPORATION & PYRAMID TUBULAR PRODUCTS, LP | * * * | MAGISTRATE JUDGE WHITEHURST |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF**
**PARTIAL MOTION FOR SUMMARY JUDGMENT**

Stone's opposition to Defendants' summary judgment motion essentially reiterates the law of redhibition and the LPLA without addressing the gravamen of Defendants' motion. Namely, the fact that Stone pleaded itemized costs that are *not* recognized damages under redhibition or the LPLA. As explained herein, the law does not provide Stone relief by way of the nine categories of costs Stone enumerates. Accordingly, Defendants are entitled to a judgment as a matter of law that acknowledges the costs Stone seeks are not a proper measure of damages for the jury to apply.[1]

As a matter of principle, both parties agree that litigants can establish economic loss resulting from property damage in one of three ways: (1) cost of repair; (2) cost of replacement; (3) or diminution in the value of the damaged property. Nevertheless, Stone did not request any one of these measures of damages. Instead, Stone requests compensation for nine categories of expenditures, as shown in their complaint:

---

[1] *See* R. Doc. 1-1, ¶ 82.

1

> **DAMAGES**
>
> **82.**
>
> The defects in NSSMC's Tubing and Couplings described above proximately caused damage to the Well and resulted in its failure and premature abandonment. As a result, Stone suffered the following damages associated with the well:
>
> a. Drilling costs;
> b. Completion costs;
> c. Tieback costs;
> d. Stimulation costs;
> e. Replacement choke costs;
> f. Temporary abandonment costs;
> g. Premature abandonment costs;
> h. Well control; and
> i. Costs associated with additional Tubing and Couplings manufactured by NSSMC and sold by Pyramid that are unusable due to the defects noted herein. [2]

And now, in further reply to Stone's opposition, Defendants address the following points in turn.

### I. The claim for diminished value of mineral rights must be dismissed as Stone concedes it will not seek such damages.

In its opposition, Stone acknowledged that it is not seeking relief for the diminished value of its mineral rights, and in fact, had drafted a stipulation to that effect.[3] Therefore, based upon Stone's representations to this Court, the Court should dismiss the claim for the "diminished value of its mineral rights."

---

[2] *Id.*

[3] Stone objects to certain exhibits attached to Defendants' motion as inadmissible hearsay. These documents consist primarily of business records that were created in the regular course of business, and should therefore be considered by the Court. Even so, the issue of law before this Court does not hinge on the admissibility of such evidence.

**II. Defendants challenge Stone's purported elements of damages, not causation.**

Stone claims that Defendants should not be permitted to raise arguments relating to causation since Defendants did not request summary judgment on this element. Stone is correct insofar as Defendants are not seeking summary judgment on causation. What caused the coupling to fail is hotly disputed and remains so. Rather, Defendants submit to this Court, through its motion for summary judgment, that Stone's purported measure of damages is improper as a matter of law.

**IV. Recoupment of Stone's entire investment in the well is not an appropriate measure of damages under Redhibition.**

Stone pleaded and prayed for the recovery of its entire investment into the Amethyst well in the form of nine cost categories. In justifying this request, Stone cites to three redhibition cases for the proposition that "the Court must instead restore Stone to the position it was in before the purchase of the defective coupling." This is a misstatement of the law of redhibition; none of cases Stone cites stand for such a proposition.

For instance, in *Lindy Investments, L.P. v. Shakertown Corp.*, the issue before the Fifth Circuit was whether redhibition required the return of the defective product *following* a full rescission of a sale. As a preliminary matter, the court recognized that the record established the plaintiff sought only a full rescission of the sale, not the reduction in purchase price, for the allegedly defective siding.[4] And as a matter of law, the award for rescission of the sale was proper. Next, the court affirmed the plaintiff's obligation to return the siding, explaining in part:

> Although it will certainly be costly to remove it and it will be of little value once removed, Louisiana law mandates that the parties be put back in the positions they held before the sale. ***To this end, the court properly ordered the Appellees to return***

---

[4] *Lindy Inv. v. Shakertown Corp.*, 209 F.3d 802, 804 (5th Cir. 2000).

3

> *the purchase price minus an appropriate discount for the value Appellants' received from use of the shingles.*[5]

This "return requirement," though involving the eventual tender of the defective product to the seller, is the end result of a successful rescission.[6] Thus, when viewed in the appropriate context, *Lindy*'s holding does not give Stone authority to seek *carte blache* all costs invested into the well. At best, assuming Stone had requested a full rescission of the sale, *Lindy*'s rationale would support an award for the coupling's purchase price and the cost incurred in recovering the coupling from the wellbore.

The next case Stone cites, *Landry v. Nobility Homes, Inc.*, is just as removed from the issue before this Court.[7] In *Landry*, like in *Lindy*, *supra*, the court determined the buyer was entitled to the full rescission of the sale, a remedy the plaintiff sought. The mobile home manufacturer appealed the decision, arguing that the defects were not sufficient to warrant a full rescission of the sale. Rather, the seller argued that the buyer should recover only the costs of repair.[8] To be clear, the court did not address whether rescission or reduction in the purchase price were proper remedies under redhibition. Unlike Stone, the buyers in *Landry* and *Lindy* properly prayed for the rescission of the sale and provided proof in support of that claim.

Lastly, Stone cites to *Dixie Roofing Co. of Pineville v. Allen Parish School Board* to establish replacement costs are a proper measure of damages under redhibition.[9] Defendants do not dispute this proposition. Importantly, the *Dixie* court did not address whether the plaintiff in the action properly plead damages recoverable in redhibition. Instead, the issue before the court

---

[5] *Id*. at 809.
[6] *Id.* at 806 (5th Cir. 2000) (citing Capitol City Leasing Corp. v. Hill, 404 So. 2d 935, 939 (La. 1981)).
[7] *Landry v. Nobility Homes, Inc.*, 488 So. 2d 726, 728 (La. Ct. App. 1986), *writ denied*, 491 So. 2d 21 (La. 1986).
[8] *Id.* at 733-34.
9 *Dixie Roofing Co. of Pineville, Inc. v. Allen Par. Sch. Bd.*, 95-1526, p. 2 (La. App. 3 Cir. 5/8/96); 690 So. 2d 49, *writ denied*, 96-2084 (La. 11/8/96); 683 So. 2d 276, and *writ denied*, 96-2100 (La. 11/8/96); 683 So. 2d 277.

was whether the plaintiff had established the product was sufficiently defective to warrant the cost of replacement.[10]

### V. Whether the well is a "total loss" is immaterial to the legal question of permissible measure of damages under the law.

To be clear, the issue before this Court is not whether the alleged coupling failure resulted in a total loss of the Amethyst well. Although Plaintiffs dedicate nearly four pages of their opposition (pp. 7-10) to this issue, whether the well is a total loss is *immaterial* to the question before this Court. As Plaintiffs concede, the Court should only consider replacement where the damaged property cannot be adequately repaired and when market value cannot be ascertained.[11] In other words, Plaintiffs would be entitled to the replacement cost of the well only after proving the well could not be repaired *and* that they could not ascertain fair market value.[12]

When the plaintiff seeks damages that are not available under an accepted damage model, including costs that would have been incurred regardless of the property damage, summary judgment is appropriate as to those costs. The case *In re Chinese-Manufactured Drywall Products Liability Litigation* illustrates this point.[13] In that action, the defendants filed a partial motion for summary judgment on homeowners' claims for alternate living expenses or moving expenses.[14] They argued that the homeowners had "either never live[d] in the respective properties or [had] moved out before they became aware that the properties contained Chinese drywall."[15] In other

---

[10] *Id.* at 56.

[11] *See Cenac v. Duplantis Moving & Storage Co.*, 407 So. 2d 424, 426 (La. Ct. App. 1981) (noting "a plethora of cases [have held] that where property is destroyed beyond repair and the market value is not ascertainable, the proper measure of damages is the replacement cost less depreciation.")

[12] *See*, *e.g.*, *Standard Oil Co. v. S. Pacific Co.*, 268 U.S. 146, 155 (1924) (explaining that where the present market value cannot be determined, other evidence such as replacement cos or depreciation may also be considered to determine the loss).

[13] 14-2722, 2020 WL 4551668, at *8 (E.D. La. Aug. 6, 2020).

[14] *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 14-2722, 2020 WL 4551668, at *3 (E.D. La. Aug. 6, 2020).

[15] *Id.*

5

words, costs incurred independent of the allegedly defective product were not recoverable as a matter of law.[16] The court agreed and granted summary judgment on the plaintiffs' claim for alternative living and moving expenses.

Like in *Chinese-Manufactured Drywall*, Plaintiffs have not plead legally cognizable damages under the LPLA or redhibition. Instead, they submit every cost ever incurred with the well in the hopes that something will stick. Contrary to the catch-all approach Stone takes here, the appropriate method for awarding damages is clearly delineated. The court in *Oracle Oil, LLC v. EPI* recognized these methods, explaining:

> [W]here the thing damaged can be adequately repaired, the proper measure of damages is the cost of restoration. If it is not practical to repair the damaged property, the injured party may be restored to his prior position by an award of the difference in the value of the property before the damage was inflicted and immediately afterwards. When this figure cannot be determined with a reasonable degree of certainty, the damage award should be based upon the cost to replace the damaged property, minus depreciation.[17]

Dismissing this jurisprudential guidance, Stone persists in its pursuit for *all* costs incurred from the well's inception through operations and eventual abandonment. Included in those costs are expenses incurred years before the coupling's purchase and investments to boost production from an underperforming well. Allowing Stone to present damage categories contrary to those recognized under the law leads to a "very real danger that the jury would apply an improper measure of damages."[18]

## Conclusion

In short, Stone did not plead for, nor offer evidence in support of, damages in accordance with Louisiana law. Therefore, Stone should not be permitted to submit to the jury the total cost

---

[16] *Id.* at 4.
[17] 391 F. Supp. 3d 634, 637–38 (E.D. La. 2019).
[18] *Household Goods Carriers' Bureau v. Terrell*, 452 F.2d 152, 157 (5th Cir. 1971).

of planning, drilling, and operating under the guise of damages. Doing so would needlessly confuse the jury with extraneous, prejudicial costs that are not recoverable under the law or unsupported by Plaintiffs' evidence. A ruling from this Court to that effect is necessary to properly marshal the presentation of evidence at a trial on the merits of this case.

      Respectfully submitted,

                    **MG+M LAW FIRM**

BY: _/s/ David R. Frohn_

    **DAVID R. FROHN**, #5758
    3729 Cobblestone Drive
    Lake Charles, LA 70605-2570
    Telephone: (337) 852-2500
    Facsimile: (504) 535-2886
    dfrohn@mgmlaw.com

    **MEGHAN B. SENTER,** Bar No. 34088
    **VIKRAM S. BHATIA**, Bar No. 37586
    MG+M Law Firm
    365 Canal Street, Suite 3000
    New Orleans, Louisiana 70130
    Phone:    (504) 535-2880
    Facsimile: (504) 535-2886
    msenter@mgmlaw.com
    vbhatia@mgmlaw.com

    **BRENT M. KARREN**
    (*Pro Hac Vice*)
    MG+M Law Firm
    201 Spear Street, 18th Floor
    San Francisco, CA 94105
    Phone: (415) 527-2828
    Facsimile: (415) 512-6791
    bkaren@mgmlaw.com

    and

    **LINDSAY WEISS**
    (*Pro Hac Vice*)
    MG+M Law Firm

        444 South Flower Street, Suite 4100
        Los Angeles, CA 90071
        Phone: (213) 622-7300
        Facsimile: (213) 622-7313
        lweiss@mgmlaw.com

**COUNSEL FOR NIPPON STEEL CORPORATION**

**JACKSON WALKER LLP**

By: */s/ Joseph A. Fischer*
    Joseph A. Fischer, III
    Louisiana Bar No. 34381
    tfischer@jw.com
    1401 McKinney Street, Suite 1900
    Houston, Texas 77010
    Telephone: (713) 752-4200
    Facsimile: (713) 752-4221

    Christopher A. Thompson
    *Admitted Pro Hac Vice*
    Eric D. Wong
    *Admitted Pro Hac Vice*
    2323 Ross Avenue, Suite 600
    Dallas, Texas 75201
    Telephone: (214) 953-6000
    Facsimile: (214) 953-5822

**ATTORNEYS FOR DEFENDANTS PYRAMID TUBULAR PRODUCTS, L.L.C. AND SUMITOMO CORPORATION OF AMERICAS**

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system on the 4th day of November, 2021. Notice of this filing will be sent to all counsel of record by operation of this Court's electronic filing system.

*/s/ David R. Frohn*